UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | |
|---|---|
| NORTH PORT FIREFIGHTERS' PENSION-LOCAL OPTION PLAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) Civil Action No. 3:11-cv-00595 ) ) Hon. William J. Haynes, Jr. ) |
| Plaintiff, | ) CLASS ACTION ) |
| vs. | ) ) |
| FUSHI COPPERWELD, INC., et al., | ) ) |
| Defendants. | ) ) ) |

MEMORANDUM IN SUPPORT OF THE MOTION OF CITY OF LAKELAND
EMPLOYEES PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL

## I. PRELIMINARY STATEMENT

Presently pending before this Court is a securities class action lawsuit (the "Action"), [1] brought on behalf of all purchasers of the common stock of Fushi Copperweld, Inc. ("Fushi" or the "Company") between August 14, 2007 and May 4, 2011, inclusive (the "Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4 *et seq.*) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional investor City of Lakeland Employees Pension Plan ("Lakeland Employees") hereby moves this Court for an Order to: (i) appoint Lakeland Employees as Lead Plaintiff in the Action under Section 21D(a)(3)(B) of the Exchange Act; and (ii) approve Lakeland Employees' selection of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as Lead Counsel and the law firm of Barrett Johnston, LLC as Liaison Counsel.

This motion is made on the grounds that Lakeland Employees is the most adequate plaintiff, as defined by the PSLRA. Lakeland Employees is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, Lakeland Employees is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class.

---

[1] In addition to the action pending before this Court, there are two related actions pending in the Southern District of New York. Contemporaneous with the filing of this motion, Lakeland Employees is filing a similar motion seeking similar relief in those related actions.

During the Class Period, Lakeland Employees incurred a substantial $687,362.39 loss on its transactions in Fushi common stock. *See* Barrett Decl., Ex. B.[2] To the best of its knowledge, this is the greatest loss sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in this Action. In addition, Lakeland Employees, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II. FACTUAL BACKGROUND[3]

Fushi is a producer of bimetallic wire products, principally copper-clad aluminum and copper-clad steel products. The Company sells bimetallic wire products to customers worldwide that operate primarily in the telecommunications, electrical utility, and transportation industries. Fushi is located in Dalian, China.

The complaint charges Fushi and certain of its officers and directors with violations of the Exchange Act. The complaint alleges that, during the Class Period, defendants issued materially false and misleading statements regarding the Company's financial performance. Specifically, defendants failed to disclose that the Company was not performing as well as represented and its financial statements were misstated due to improper practices, including inappropriately applying hedge accounting to a cross currency interest swap derivative entered into in April 2007. As a result of defendants' false statements, Fushi stock traded at artificially inflated prices during the Class Period, reaching a high of $27.00 per share in December 2007.

---

[2] References to the "Barrett Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of George E. Barrett, dated July 5, 2011, and submitted herewith.

[3] These facts are drawn from the allegations in the complaint.

On March 11, 2011, Fushi issued a press release announcing its preliminary fourth quarter and full year 2010 earnings results. The Company preliminarily reported revenue growth to approximately $69.9 million for fourth quarter 2010 and revenue growth to $265 million for fiscal year 2010. Additionally, the Company announced it was reevaluating the application of Generally Accepted Accounting Principles in certain accounting treatments applied to its 2007, 2008 and 2009 financial results and its previously filed quarterly financial statements for the first three quarters of 2010. On this news, Fushi shares dropped by $1.68 per share, to close at $7.74 per share on March 16, 2011 – a three day decline of 18%. However, the positive statements prevented a complete collapse in Fushi's share price.

Subsequently, on March 29, 2011, Fushi filed a Form 8-K with the SEC disclosing that its Audit Committee had concluded that the Company's previously reported financial statements for the years ended December 31, 2009, 2008 and 2007 and its unaudited interim financial statements for the quarters ended March 31, 2010, June 30, 2010 and September 30, 2010 should be restated and should no longer be relied upon. On this news, Fushi shares dropped by $0.19 per share, to close at $8.12 per share on March 30, 2011, a one-day decline of 2.3% per share.

Then, on May 4, 2011, Fushi issued a press release announcing its first quarter 2011 financial results. The Company reported revenue of $65.9 million and net income of $6.8 million, or $0.18 diluted earnings per share ("EPS"), below analysts' estimates of EPS of $0.23. On this news, Fushi's stock dropped again and began a steady decline from $8.46 per share on May 3, 2011, to $7.05 per share on May 19, 2011.

As a result of defendants' false statements and omissions, Fushi securities traded at artificially inflated prices during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 68% from their Class Period high of $27.00.

### III. ARGUMENT

#### A. Lakeland Employees Should Be Appointed Lead Plaintiff

##### 1. The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). In addition to the filing of this Action, several related actions were filed in the United States District Court for the Southern District of New York. Plaintiff in the initial action filed in that court, *Levy v. Fushi Copperweld, Inc., et al.*, No. 11-cv-03104-PGG (S.D.N.Y.), caused the first notice regarding the pendency of that action to be published on *Marketwire*, a national, business oriented newswire service, on May 6, 2011. *See* Barrett Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class who the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. Lakeland Employees Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a. Lakeland Employees Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on July 5, 2011. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice on May 6, 2011, Lakeland Employees timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Lakeland Employees has duly signed and filed a certification stating that it is willing to serve as a representative party on behalf of the class. *See* Barrett Decl., Ex. C. In addition, Lakeland Employees has selected and retained competent counsel to represent itself and the class. *See* Barrett Decl., Exs. D and E. Accordingly, Lakeland Employees has satisfied the individual requirements of 15 U.S.C. §78u4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of Lead and Liaison Counsel as set forth herein, considered and approved by the Court.

#### b. Lakeland Employees Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately

benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. Lakeland Employees, as an institutional investor, is precisely the type of Lead Plaintiff Congress envisioned when it passed the PSLRA. *See id.*

### c. Lakeland Employees Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certification, *see* Barrett Decl., Ex. C, Lakeland Employees incurred a substantial $687,362.39 loss on its transactions in Fushi common stock. *See* Barrett Decl., Ex. B. Lakeland Employees thus has a significant financial interest in this case. Therefore, Lakeland Employees satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this Action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### d. Lakeland Employees Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 11, 1997). Lakeland Employees satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *18.

Lakeland Employees satisfies this requirement because, just like all other class members, it: (1) purchased Fushi common stock during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result thereof. Thus, Lakeland Employees' claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Lakeland Employees to represent the class to the existence of any conflicts between the interest of Lakeland Employees and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

Here, Lakeland Employees is an adequate representative of the class. As evidenced by the injuries suffered by Lakeland Employees and the class, the interests of Lakeland Employees are clearly aligned with the members of the class, and there is no evidence of any antagonism between Lakeland Employees' interests and those of the other members of the class. Further, Lakeland Employees has taken significant steps that demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Lakeland Employees' proposed Lead and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Lakeland Employees *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### B. The Court Should Approve Lakeland Employees' Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, Lakeland Employees has selected the law firm of Robbins Geller as Lead Counsel and the law firm of Barrett Johnston, LLC as Liaison Counsel. Robbins Geller has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re*

*Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.), in which Robbins Geller achieved the largest recovery ever obtained in a shareholder class action. *See* Barrett Decl., Ex. D. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

## IV. CONCLUSION

For all the foregoing reasons, Lakeland Employees respectfully requests that the Court: (i) appoint Lakeland Employees as Lead Plaintiff in the Action; (ii) approve its selection of Lead and Liaison Counsel as set forth herein; and (iii) grant such other relief as the Court may deem just and proper.

DATED: July 5, 2011

Respectfully submitted,

BARRETT JOHNSTON, LLC
GEORGE E. BARRETT, #2672
DOUGLAS S. JOHNSTON, JR., #5782
DAVID W. GARRISON, #24968

/s/ *George E. Barrett*
GEORGE E. BARRETT

217 Second Avenue, North
Nashville, TN 37201-1601
Telephone: 615/244-2202
615/252-3798 (fax)
gbarrett@barrettjohnston.com
djohnston@barrettjohnston.com
dgarrison@barrettjohnston.com

*[Proposed] Liaison Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
danim@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

*[Proposed] Lead Counsel for Plaintiff*

SUGARMAN & SUSSKIND
ROBERT SUGARMAN
PEDRO A. HERRERA
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: 305/529-2801
305/447-8115 (fax)

*Additional Counsel for Plaintiff*

CERTIFICATE OF SERVICE

  I hereby certify that on July 5, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

  I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 5, 2011.

               s/ *George E. Barrett*
               GEORGE E. BARRETT

               BARRETT JOHNSTON, LLC
               217 Second Avenue, North
               Nashville, TN 37201-1601
               Telephone: 615/244-2202
               615/252-3798 (fax)

               E-mail:gbarrett@barrettjohnston.com

# Mailing Information for a Case 3:11-cv-00595

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **George Edward Barrett**
  gbarrett@barrettjohnston.com,lbrock@barrettjohnston.com

- **David W. Garrison**
  dgarrison@barrettjohnston.com,lbrock@barrettjohnston.com

- **Pedro A. Herrera**
  pherrera@sugarmansusskind.com

- **Douglas S. Johnston , Jr**
  djohnston@barrettjohnston.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Samuel H. Rudman**
  srudman@csgrr.com

- **Robert Sugarman**
  sugarman@sugarmansusskind.com

- **David C. Walton**
  davew@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)